# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GARY VAUGHN,                                )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )          NO. 09-CV-455-WDS
                                            )
THOMAS J. VILSAK, SECRETARY,                )
UNITED STATES DEPARTMENT OF                 )
AGRICULTURE,                                )
                                            )
                    Defendant.              )

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Before the Court is defendant, Thomas J. Vilsack's, motion for summary judgment (Doc. 19) to which plaintiff has filed a response (Doc. 28) and defendant a reply (Doc. 33). Also before the Court is defendant's motion to strike affidavits (Doc. 32) to which plaintiff has filed a response (Doc. 38) and defendant a reply (Doc. 39).

## BACKGROUND

The plaintiff is employed by the Forest Service, United States Department of Agriculture (USDA), and is stationed at Golconda Job Corps Center, Golconda, Illinois. The facts which led to this lawsuit began in to approximately 2000. At time, the plaintiff became involved with a co-worker, Lynn Towery (Towery) (both plaintiff and Towery were married at the time their relationship began). He and his son moved into Towery's Harrisburg, Illinois home for a few years. Sometime around 2002, Towery and plaintiff moved into a new house, and, although each had divorced their prior spouse, they did not marry. Apparently all was not rosy between plaintiff and Towery, and in April of 2005, Towery left their home and moved back to her prior residence (taking

all the furniture with her). Prior to this, in 2004-05, plaintiff was a party to an Equal Employment

Opportunity action against the USDA in which he alleged racial discrimination in violation of Title

VII. *Vaughn v. United States Department of Agric.,* No. 06-CV-4038-MJR (S.D. Ill. 2006). In 2007

the claim was settled, and he and a co-plaintiff received a total payment of $150,000 (*see id.* 60 Day

Order and Judgment at Docs. 63 & 65).

After Towery moved out, plaintiff engaged in a pattern of behavior towards Towery which

led to her complaining to USDA about fear and harassment. In 2005 she filed a complaint with

Michael Ayon, Center Director, detailing frequent, unwanted, personal contacts which were not

work-related. Ayon met with plaintiff and Towery in an attempt to resolve the issue and plaintiff

agreed to limit his contact with Towery to only "work-related" matters. A memo memorializing the

meeting was sent to plaintiff and Towery that same day. Plaintiff was notified by USDA on July

14, 2005, that he had not complied with the terms of that memo. He was placed on administrative

leave and ordered from the job site and was further directed to seek help through the employee

assistance program.

In July of 2005 the plaintiff's behavior was sufficiently serious enough to warrant the

issuance of an emergency Domestic Violence Order of Protection from Saline County Circuit Court.

This order of protection was issued after a hearing at which both Towery and the plaintiff were

present.[1]

In August of 2005, in response to the order of protection, the defendant required plaintiff to

be evaluated by a clinician psychotherapist, Roger K. Lyons, who issued a report on September 1,

---

[1]The Saline County Circuit Court emergency order of protection noted that Vaughn was "suicidal." This order was in effect until August 5, 2005. On that date, Vaughn, who was represented by counsel, and Towery both appeared and a contested hearing was held. Several witness testified and exhibits were admitted. The Saline County Court found that Vaughn had harassed Towery and issued a permanent domestic violence order of protection.

2005, that plaintiff had acknowledged that the Order of Protection was a result of his "obsesive/compulsive contacts" with Towery and plaintiff also acknowledged his difficulty in accepting the termination of that relationship.

In September, 2005 the USDA allowed plaintiff to return to the Golconda job site, subject to the condition that he have no contact with Towery. He was warned that if he violated this condition, he would be subject to disciplinary action. In February of 2006, the no-contact condition was lifted. The relationship between Towery and plaintiff continued to deteriorate nontheless, leading to Towery filing a formal complaint in October of 2006, and an EEO complaint in February of 2007. Thereafter, the USDA, in March of 2007, directed plaintiff to have no contact with Towery. The EEO complaint with Towery was settled in August of 2007. A condition of that settlement was that plaintiff was not to be on the job site when Towery was working. Additionally, if plaintiff was returned to the site while she was working, she was to be removed to the Forest Service Center Supervisor's office to prevent contact with plaintiff. In September of 2007, the Center's director, David Floyd, issued a letter of direction to plaintiff setting out his restrictions and change in hours and work, as required by the Towery settlement. Plaintiff is currently on a three weekday, from 3:30 p.m. to midnight, and weekends schedule.

Plaintiff asserts that this modified work schedule was presented to him two days after he signed a settlement agreement in *Vaughn v. United States Department of Agric.,* No. 06-CV-4038-MJR, and that the work schedule, which he does not favor, was done in retaliation for the EEO action. The plaintiff asserts that this negative job action timing is too coincidental to be anything *other* than in response to the settlement. The defendant asserts that there were legitimate, non-retaliatory reasons why the plaintiff was given a work hour reassignment, all of which were related

3

to his behavior towards Towery, not due to any EEO action he had previously filed and settled.

## 1. Summary Judgment Standard.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." All facts and inferences are to be drawn in favor of the nonmoving party. *Timmons v. Gen. Motors Corp.,* 469 F.3d 1122, 1125 (7th Cir. 2006). However, this does not include "[i]nferences which are supported only by speculation or conjecture." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008). Therefore, the nonmoving party must "do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing that there is some genuine issue for trial." *Keri v. Bd. of Trs. Of Purdue Univ.* 458 F.3d 620, 628 (7th Cir. 2006) (citations omitted) (*quoted in Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). A genuine issue of material fact exists "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Argyropoulos*, 539 F.3d at 732 (*quoting Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)).

## 2. Retaliation in a Title VII Case

"Title VII forbids employer retaliation where an employee 'has opposed any practice made an unlawful employment practice' by Title VII or 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under' Title VII." 539 F.3d 732 (*quoting* Title VII. 42 U.S.C. § 2000e-3(a)). Plaintiff can prove retaliation under either the direct or indirect method, 539 F.3d at 733. He must present evidence, direct or circumstantial, that: "(1) [he] engaged in statutorily protected activity; (2) [he] suffered a materially adverse action; and

4

(3) a causal connection exists between the two." *Id.* Plaintiff can show a prima facie case of retaliation under the indirect method by establishing that "(1) [he] engaged in statutorily protected activity; (2) [he] suffered a materially adverse action; (3) [he] met [his] employer's legitimate expectations; i.e. [he] was performing [his] job satisfactorily; and (4) [he] was treated less favorably than some similarly situated employee who did not engage in statutorily protected activity." *Id.* (citations omitted). There is no doubt that plaintiff's EEO complaint is a "statutorily protected" activity and neither party really disputes this element.

The key here is whether plaintiff can establish the other elements of the test. Plaintiff asserts he can proceed under both the direct and indirect methods of showing a causal connection between his statutorily protected activity and his adverse employment action. Plaintiff first asserts that as direct evidence of retaliation, plaintiff's work-hour change came after his EEO claim was settled. However, the defendant has offered a legitimate, non-retaliatory reason for the change in hours, that is, plaintiff's actions at work with respect to a co-worker, Towery. Plaintiff ties his direct evidence claim to the proximity of the dates, but that, in light of the evidence of harassment facing defendant does not give rise to a direct evidence showing.

Plaintiff disputes the nature of defendant's determination of workplace harassing actions by plaintiff against Towery, i.e. that there was no factual finding by defendant that plaintiff had harassed Towery, and no claims of sexual harassment were presented to plaintiff by defendant. However, the defendant has established that the job changes were made only after a state court Order of Protection (with an adversarial hearing) was issued and only after plaintiff had been advised that he had failed to comply with the no-contact restrictions placed on him in 2005. Once those no-contact restrictions were lifted, plaintiff's actions were such that Towery filed an administrative and

EEO complaint. It is the responsibility of employers to take corrective actions to stop and/or eliminate workplace harassment. Once aware of workplace harassment, "the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 978 (7th Cir.2004) (internal citations omitted)(*quoted in Vance v. Ball State University,* 646 F.3d 461, 469 (7th Cir. 2011)). Plaintiff disputes the credibility of Towery's claims of harassment, but this case is not about Towery's harassment claim directly, but, whether defendant's actions were reasonable in light of those claims. Suspicious timing alone "will rarely be sufficient . . .to create a triable issue." *Culver v. Gorman*, 416 F.3d 540, 546 (7th Cir. 2005) (citations omitted).

Plaintiff's claim is that the defendant should have not given Towery's claims credence. What plaintiff would have the Court do is, first second-guess the state court for issuing the protective order and, then penalize the defendant for taking prompt corrective measures when faced with a credible claim of harassment (as evidenced by the protective order) as it is directed to do by Title VII. Moreover, as the Seventh Circuit noted in *Argyopoulos*, 539 F.3d at 734, "inappropriate workplace activities are not legitimized by an earlier-filed complaint of discrimination." Therefore, the Court **FINDS** that plaintiff has not established retaliation based upon the direct method of proof.

To establish proof of retaliation by the indirect method, plaintiff must show "both (1) that [he] performed [his] job satisfactorily and (2) that [he] was treated less favorably than some similarly situated employee." 539 F.3d at 735. To determine the first prong, "[t]he proper inquiry mandates looking at [the plaintiff's] job performance through the eyes of [his] supervisors at the time of" his adverse employment action. *Id.*

The chronological review of the corrective actions taken in this case established that the defendant attempted to limit any harassing behavior, yet to achieve that and to keep plaintiff employed, it was no longer sufficient that he be given a no-contact restriction, rather work hour changes were required. Plaintiff contends that he cannot "do his job" with these hours, in part because he is limited in bonuses and overtime. But, plaintiff's change in work hours was not result of animus on the part of the employer, but was driven by his own actions with respect to a co-worker, and his employer's reasonable response to that situation.

Accordingly, the Court **GRANTS** defendant's motion for summary judgment and judgment is entered in favor of the defendant Thomas J. Vilsak, Secretary, United States Department of Agriculture, and against plaintiff, Gary Vaughn, on all claims raised. The motion to strike is **DENIED** as moot.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

**DATE:  3 October, 2011**

> **/s/  WILLIAM D. STIEHL**
> **DISTRICT JUDGE**